## CONSOLIDATED FASTENER CO. v. LITTAUER et al.

(Circuit Court of Appeals, Second Circuit. December 1, 1897.)

### No. 63.

1. PATENTS—PRELIMINARY INJUNCTION—PRIOR DECISION—APPEAL.

On appeal from an order granting a preliminary injunction on the strength of a prior decision by the circuit court against another party, such prior decision will be given the same weight which it should have before the circuit court, in the absence of some controlling reason for disregarding it. American Paper Pail & Box Co. v. National Folding-Box & Paper Co., 2 C. C. A. 165, 51 Fed. 229, followed.

2. SAME—IMPROVEMENT IN BUTTONS.

The Raymond patent, No. 405,179, for an improvement in buttons, covering a spring stud consisting of a depressed dome forming an annular riveting surface, an exterior engaging spring, and a fastening eyelet adapted to enter from beneath the fabric, and be riveted over by contact with the depressed dome, construed, and held infringed. 79 Fed. 795, affirmed.

This is an appeal from an order of the circuit court, Northern district of New York, granting an injunction pendente lite against infringement of complainant's patent.

The patent in suit, No. 405,179, was granted to Pierre A. Raymond, June 11, 1889, for an improvement in buttons. Claims 1 and 3, only, are involved in this litigation. Suit was heretofore brought upon the same patent by this complainant against the Columbian Fastener Company, of which the present defendant, Littauer, was president; and at final hearing on pleadings and proofs the patent was sustained, claims 1 and 3 were construed, and held to be valid, and the device of the Columbian Company was found to infringe. The opinion, which contains a full and careful discussion of the patent and of the evidence introduced, will be found reported in 79 Fed. 795. No appeal from the decision in the suit against the Columbian Company appears to have been taken. Subsequently the defendants in the suit at bar began to use buttons of a different model from that which was found to infringe in the former suit, by attaching them to gloves which defendants' firm made and sold. Believing this new model button to be also an infringement, complainant brought suit, and moved, before the same judge who had construed the patent in the Columbian Company Case, for an order granting injunction

pendente lite. In opposition there were presented affidavits of the defendant Littauer, and some others, several prior patents, and the file wrapper and contents. It is manifest from the opinion above cited that much of this evidence was before the court in the Columbian Company Case. What new evidence, if any, is now presented, does not appear. Having once discussed the patent and the prior art in a comprehensive opinion, the judge who sat at circuit granted an injunction against the new-model button, without writing anything further, and defendants have appealed.

Wm. A. Jenner, for appellants.

John R. Bennett, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts). This court pointed out the distinction between "appeals from orders" and "appeals from final decrees" in American Paper Pail & Box Co. v. National Folding-Box & Paper Co., 2 C. C. A. 165, 51 Fed. 229:

"The adjudication upon which the motion for preliminary injunction was based, not being the subject of the appeal, is to have the same weight which it should have before the circuit court, * * * in the absence of some controlling reason for disregarding it."

No such controlling reason is suggested here. No prior patent, or prior use or prior publication, having an important bearing upon the validity or construction of the patent, and which was not before the court in the Columbian Company Case, is now presented, no new authority on patent law is now first cited, there is nothing to show an improvident exercise of legal discretion by the circuit judge, and apparently this is an effort to review the decision in the Columbian Case at final hearing upon a partial presentation of the evidence then considered, and without the cross-examination. There is no warrant for such practice, which was expressly condemned in American Paper Pail & Box Co. v. National Folding-Box & Paper Co., supra. The only question, therefore, to be considered on this appeal, is whether the new-model button infringes the first and third claims of the patent, as construed in the Columbian Company Case.

The button is of the kind which may be more appropriately called a "spring stud," and is used for fastening gloves; being adapted to engage with a socket corresponding to the old-fashioned buttonhole. The flaps of the glove being brought together, the socket is pressed perpendicularly down upon the stud, and the spring cap of the latter yields sufficiently to allow the stud to enter the socket, whereupon its resiliency causes it to engage with the interior of the socket (such interior being a little larger in diameter than is the aperture leading into the socket) sufficiently to hold it in place, as against the ordinary horizontal pull. In his specification the patentee states that in two former patents (349,453, of September 21, 1886, and 369,882, of September 13, 1887) he had described and claimed a fastening device for gloves, consisting of a socket and spring stud, and proceeds:

"In the said patents the spring stud was formed by a semicylindrical spring cap, which was made from a blank, having a series of radial spring fingers, bent down and united to a common base. Within this spring cap was a dome-shaped piece, having a horizontal flange at its lower edge, which formed the base, to which the spring fingers were united by a clamping ring. The clamp-

ing ring also inclosed the upper flange of an eyelet, which was adapted to be put down through the fabric, and riveted over from the underside so as to hold the spring stud in place on the fabric."

There seem to have been objections to this mode of inserting the eyelet, and "to avoid these objections" the construction of the patent was devised—

"In which construction the dome forms a fundamental supporting part, so rigid as to admit of an eyelet being riveted over against it, and affording a seat for the external spring, by which the stud is made to engage with the * * * socket. Instead of employing the eyelet with its upper flange held in the clamping ring, I make use of an eyelet having a smaller shank and a larger flange, which is inserted from beneath the fabric, and, extending up into the dome piece above described, is met by a depending lug in the top of the said dome piece, against which it is forced, and its upper edge thereby riveted over so that it cannot be withdrawn, the spring cap being thus held firmly in position upon the fabric."

Describing the drawings, patentee proceeds:

"C is a clamping ring holding the spring fingers against flange, b. This clamping ring and the base of the dome form a flange extending beyond the spring, by which the stud may be held while the eyelet is being forced into position. The upper end of dome, B, instead of being rounded up, as in my previous patents mentioned above, is depressed so as to form a re-entrant cavity on its upper side, and a depending convexity on its lower side. This makes a sort of annular riveting depression in the upper part of the dome or support. D is an eyelet having a broad flange at its base, and adapted to pass through the fabric, E; and entering the dome, B, and meeting the depression at its upper end, it is thereby riveted over at its upper end so that it cannot be withdrawn, thus holding the spring stud firmly in its place on the fabric."

Fig. 5, which shows all these parts, is here reproduced:

*Fig 5.*

The circuit court, in the Columbian Company Case, held that:

"The valuable feature of this stud is passing the eyelet through the underside of the fabric into the compressed dome, where it is upset and securely riveted; the fabric being held firmly between the flanges of the eyelet and dome. * * * That it is simple, durable, strong, inexpensive, and popular, is abundantly proved by the record."

The claims in controversy are:

"(1) The combination, with an embracing button attached to one part of a fabric, of a spring stud attached to the opposite part, and adapted to engage

the said button; the stud being composed of a depressed dome or support forming an annular riveting surface, and an exterior engaging spring, and being fastened to the fabric by an eyelet adapted to enter the back of the dome or support, and be riveted over by contact with such depression." "(3) A spring stud for engagement with a receiving button or socket consisting of a depressed dome or support forming an annular riveting surface, and an exterior engaging spring, combined with a fastening eyelet; the eyelet being adapted to enter from behind, and be riveted over by contact with the said depression, and the dome having a flange extending beyond the spring, by which it is held while the eyelet is forced into position."

Exactly what is the "improvement" of the patent in suit over the earlier patents to Raymond will be apparent from inspection of the following sketch:

DOME OF
PRIOR RAYMOND PATENT.

a is the spring cap; B, the dome; b, the flange of the dome; C, the clamping ring which holds the flange of the spring pressed down upon the flange of the dome; D is the evelet, one flange of which is held by the clamping ring.    After the shank of D is thrust through the fabric, it is bent over outwards so as to form another flange, holding the entire button to the fabric.    It is apparent that it would be impossible to insert the eyelet into the dome of this prior Raymond patent, and fasten it there, since there is no recess into which any part of it could be driven.    If the shank of the eyelet was long enough, and was pushed in far enough, its end would be turned over inwards by the dome, and the two parts would not interlock.    In the present patent, however, the depression of the dome has produced an annular recess of greater diameter than the interior of the walls of the dome at or above the flange.    When the eyelet shank is forced in, its end will be turned over outwards into the annular recess, thus interlocking the two parts together.    Of this feature of the patent the circuit court, in the Columbian Company Case, said:

"Raymond's combination was new, because he introduced into his stud parts which combined to attach the stud to the fabric in a novel way, and in a better way than anything which preceded it. * * * The new mode of fastening above described is the essence and gist of the invention. It is perfectly

obvious that this is what Raymond intended to cover by the claims in question. No one can be deceived or misled upon this point."

It is argued here that, because the description and claims refer to the dome as a supporting part, the claims should be so construed as to cover only structures in which the dome affords lateral support to the spring cap. It is unnecessary to discuss this argument. It was urged before the circuit court upon a record which, so far as appears, contained all there is here, with the addition that the witnesses were subject to cross-examination; and that court held that the patentee used the word "support" in the sense of a foundation, rather than a buttress,—the spring cap being seated on the flange of the dome, and no element of lateral support being included in the claims. The decision of the circuit court in the Columbian Company Case was accepted by the judge who granted the preliminary injunction in the case at bar, and, there being no "controlling reason for disregarding it," it should have the same weight here upon appeal from the injunction order.

The following sketch shows the defendants' form of dome (the eyelet is not shown):

The spring cap, a, is "a vertically split head, projecting from a base plate, the split communicating with slits in the base plate, which intersects transverse slits in the base plate. The head is thus divided into two parts, and a spring action is given thereto, which causes the head to return to normal position after the pressure is removed, or cause a locking action with a socket. The base plate of the head is turned over so as to embrace and clamp the flange of the hat-shaped piece [the dome]. The eyelet enters from below, and the top of the eyelet contracts with the underside of the top of the hat, which causes the sides of the eyelet to crinkle and press outwardly against the sides of the hat; and, the interior diameter of the hat being somewhat greater at the top than at its opening, the withdrawal of the eyelet is thereby prevented."

This quotation is from appellants' brief. When it is read in connection with the device of the patent, infringement seems to be reasonably plain. No serious attempt is made to distinguish the split spring head from the "semicylindrical spring cap" of the patent. Defendants' contention is that their device has no "depressed dome or support forming an annular riveting surface." In support of this contention it is urged: First, that defendants' dome does not afford lateral support to the spring head; second, that it has no "annular riveting surface"; third, that the eyelet is not riveted over by contact with a depression. The first of these arguments has been already disposed of, and inspection of the device or the drawing discloses the weakness of the other two. If a cylinder be conceived as rising perpendicularly from the inner circumference of the foundation walls of the dome of the patent in suit, it will be found that, by rea-

son of the depression of the dome from its original position in the prior Raymond patents, there is formed outside of the walls of the cylinder thus conceived, and inside of the dome itself, an open space, which entirely surrounds such cylinder, and is therefore annular. Being itself annular, the outer wall which surrounds it is also annular. This annular space will receive such portions of the metal of the eyelet shank as may be driven into it, allowing this metal thus to enter until it engages with the solid wall of the inside of the dome, and thus holds the eyelet against withdrawal. The wall is therefore a riveting surface. To contend that the defendants' device has not such "annular riveting surface" is preposterous. Inspection of the drawing, and a perusal of the description above quoted from appellants' brief, conclusively prove the converse. It is urged, however, that defendants' device contains no eyelet "adapted * * * to be riveted over by contact with said depression" (i. e. the depressed dome). Defendants' contention is that since the top of its dome is horizontal, or possibly a little vaulted, it cannot be the equivalent of the depressed dome of the claims. This calls for an extremely narrow construction of the words "depressed" and "depression," as used in the patent. It will be remembered that Raymond had in mind an improvement on his earlier patents, in which his high-vaulted dome left no annular space for the eyelet to turn over into, and presented no riveting surface, against which it might be turned, and thus held against withdrawal. His "improvement" was the providing for such a method of fastening the eyelet, and he secured it by lowering or depressing his old high-vaulted dome. No particular amount of depression was needed, nor is any specified in the claims, except that it must be sufficient to produce the result, viz. to furnish the annular riveting surface. The drawing of the patent shows a dome, not only depressed, but actually reversed. It is manifest, however, that reversal is not necessary; that the same result would be accomplished by depressing the old dome to a horizontal, or even to such an extent that, although still architecturally a dome, the act of depression would cause the surplus metal to swell out so as to form the annular space and annular surface necessary for riveting. The dome is depressed in either case, and, when the end of the eyelet shank contacts with it, it may fairly be said to contact with a depression, within the meaning of the claim, which uses the words "depression" and "depressed dome" as synonymous. The only support to the defendants' claim is found in the language of the specification, where the patentee, describing the drawings, says:

"The upper end of dome, B, instead of being rounded up, as in my previous patents mentioned above, is depressed so as to form a re-entrant cavity on its upper side, and a depending convexity on its lower side. This makes a sort of annular riveting depression in the upper part of the dome or support."

From the whole patent, however, it is quite plain what the improvement was which he had in mind, which he fully describes, and which he sets forth in the claim, correctly, as:

"A depressed dome or support forming an annular riveting surface, [and,] by contact with [which depressed dome] an eyelet entering the back of the dome, * * * [can] be riveted over."

We know of no principle of patent construction which, in such a case (the improvement being novel), would require the court to read into the claim the particular concrete form of improvement shown in the drawings and in the descriptions of such drawings. The order of the circuit court is affirmed, with costs.