INTERNATIONAL TIME RECORDING CO. v. W. H. BUNDY RECORDING
CO.

(Circuit Court of Appeals, Second Circuit.  February 11, 1908.)

No. 119.

PATENTS—VALIDITY AND INFRINGEMENT—WORKMAN'S TIME RECORDER.

The Cooper patent, No. 528,223, for a workman's time recorder, covers only a time recorder in which both the faces of the printing wheels and the position of the abutment on which the card rests are regulated by the clock movements through appropriate mechanical connections. Claim 1 is void as too broad under such construction, and claim 4 as either too broad or, if qualified by the words "substantially as described," so as to make the clock movement of the abutment an element as a mere duplication of claim 3. Claims 5, 7, and 10 held infringed by a machine in which, while the raising of a cover by hand is necessary to bring the abutment into position, the position proper for that particular day is automatically determined and fixed by the clock mechanism.

Appeal from the Circuit Court of the United States for the Northern District of New York.

This cause comes here upon cross-appeals from a final decree of the Circuit Court, Northern District of New York, which held one claim of a patent valid and infringed, and dismissed the bill as to four other claims. The patent is No. 528,223 granted October 30, 1894, to D. M. Cooper for Improvement in Workman's Time Recorder. The opinion of the Circuit Court is reported in 152 Fed. 717.

D. W. Cooper and Thomas B. Kerr, for complainant.

A. E. Parsons, W. A. Redding, and William F. Hall, for defendant.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. The Cooper patent was before this court in International Time Recorder Company v. Dey, 142 Fed. 736, 74 C. C. A. 68. For a detailed statement of the patented structure the voluminous excerpts from the specifications which are found in our former opinion and in the opinion now under review may be consulted. At this stage of the discussion a brief summary will be sufficient.

Cooper's invention relates to machines known as workmen's time recorders and has for its object to produce a form of apparatus by means of which a workman personally records the time when he enters or leaves the factory or both. This record, moreover, is made not on some continuous slip which contains the records of several workmen, but on individual cards appropriated one to each workman. These cards are kept in a rack (or racks) near the instrument; the workman coming into the factory takes it from the rack and inserts it in a card receptacle. He then moves a lever to the right (toward the word "In") thus positioning the card laterally, the card receptacle being movable laterally in front of the printing devices, and then by the upward movement of a lever releases the latter devices so that an imprint is made on the card. He then removes his card and places it in a rack, from which he takes it on leaving the factory, again inserts it in the receptacle and repeats the operation, moving the lever to the left (to "Out") and accomplishing the same result—an impression of the printing device on the card. The printing devices are so connected by mechanism with the time movement of an ordinary striking clock that at every minute from 12 m. or m. n. to 11:59 p. m. or a. m., the printing wheels will present towards the paper to be impressed the proper figures to denote the hour and minute. As shown in the specification and drawings the card-holder has an open mouth accessible through a suitable aperture and engaging the card at the sides only, being open at front and back. "It is not" says the patentee, "provided with a stationary bottom for engaging the end of the card when inserted, but in lieu thereof a movable abutment is employed for limiting the distance the card can be inserted, and in the present embodiment this is formed by a lever, 40, pivoted loosely on the arbor, 27, and having a vertically extending lifting rod, 41, by means of which it is raised every twelve hours an amount equal to the distance between the centers of the horizontal spaces on the card—that is, at half-past twelve, the abutment, 40, is raised permitting the introduction of the card in the holder only far enough to bring the center of the next horizontal space below the one previously marked in line with the marking wheels of the time stamp." Each card is ruled or divided by horizontal lines into the days of the week commencing with Sunday at the top and ending with Saturday at the bottom, and each of these daily divisions is divided into two horizontal sections by a line indicating a. m. or p. m. The "lifting rod" which thus raises the abutment terminates upwardly in a yoke through which there plays a cam, 56, secured to an arbor which is itself secured to a gear which receives movement intermittingly from the striking part of the clock mechanism. The connections and relative arrangements of the parts are such that the cam, 56, will be given a complete revolution once a week, and at half-past 12 o'clock Saturday night the

end of the yoke will be dropped from the highest part of the cam to the lowest, causing the abutment, 40, to return to the lowest part of the card-holder. These connections are also so arranged that the partial rotation of the cam by the release of the train (i. e., the train of gears constituting the modified striking mechanism) every 12 hours will cause the abutment to move upward in the card-holder the distance between the centers of two of the horizontal spaces on the card, thereby decreasing the depth of the card receiver, every 12 hours or half day, until Saturday night, and then on Sunday morning leaving it of maximum depth so that the card may be inserted nearly its full length, in position to print on the top line of the card. The operating devices for the entire apparatus, as shown above, are those employed in ordinary striking clocks, that is to say two springs and gear trains, one for operating the time movement proper, and the other the striking mechanism. The specification states:

"The specific construction of the machine shown for operating the time stamp and the movable abutment, 40, is not essential, but I have shown one form of device which I find is well adapted to the purpose."

Reviewing the above description, we find in the apparatus of the patent these characteristics. (1) The rotary movements of the printing wheels are so actuated and controlled that they are at all times in proper position, so that when they are, by the workman's moving the lever, 28, thrown into engagement with the card they will print thereon the true hour and minute. This regulation and control is effected by the mechanism itself, clock and connecting, without the intervention of the human mind. It is not necessary for some one to remember that it is 9:57 or 10:18, and by observation and manual operation to place the wheels in the position appropriate for that hour and minute. So far as the proper positioning of the printing wheels is concerned, the apparatus is automatic. (2) The abutment of the card-holder is moved upward, intermittently, every half day (it might as easily be so moved each day) by means of a cam on which through a connection it rides up day by day till the end of the week is reached, when it falls to its original position. This cam movement is so actuated and controlled that the workman's card when placed by him in the holder will at all times fall into proper position, so that when, by the workman's moving the lever, 28, the printing wheels are brought into engagement with the card, they will so engage on that portion of the card which is appropriated for entries of the particular day when such engagement is effected. This regulation and control of the abutment (and, therefore, of the card) is accomplished by the mechanism itself, clock and connecting, without the intervention of the human mind. It is not necessary for any one to remember that it is Tuesday or Friday, and, by observation and manual operation to place abutment (and card) in the position appropriate for that particular day. So far as the proper positioning of the abutment (and card) is concerned, the apparatus is automatic.

In the former appeal in the Dey suit the claims considered were Nos. 2, 3, 4, 5, 7, 8, 10, and 12. In the present appeal the claims presented are Nos. 1, 4, 5, 7, and 10. The Circuit Court found infringement of

claim 4 only, and dismissed the bill as to the others. The claims now before us read as follows:

"1. In a time recorder, the combination with a time stamp, of a card guide or receiver adjustable relatively to the stamp in one direction, an actuating device for causing the stamp to mark a card in the receiver, an abutment for limiting the movement of a card relatively to the stamp, said abutment being independent of the stamp actuating device, and adjustable in a direction at an angle to the before-described movement of the guide, whereby the card may receive two or more marks in the same or different planes, substantially as described."

"4. In a time recorder, the combination with a time stamp and operating devices therefor, of a card guide or receiver, an abutment limiting the movement of the card relative to the time stamp, and intermittingly operated mechanism for actuating the abutment, substantially as described.

"5. In a time recorder, the combination with a time stamp, and operating devices therefor, of a card guide or receiver, an abutment limiting the movement of the card relative to the time stamp, and intermittingly operated mechanism controlled by a time movement for actuating said abutment, substantially as described."

"7. In a time recorder, the combination with the stamp embodying marking wheels, and a time movement, of a card guide or receiver, an abutment limiting the movement of the card relative to the marking wheels, actuating mechanism for moving the abutment and controlled from the time movement of the stamp, substantially as described."

"10. The combination with the time stamp embodying marking wheels, and a time movement operating them, of the card receiver open at front and rear, and movable relatively to the marking wheels, the movable abutment at the bottom of said receiver, actuating devices for moving said abutment intermittingly toward the marking wheels, a time mechanism for controlling it, a movable hammer co-operating with the marking wheels and operating devices therefor, substantially as described."

It will be observed that claim 1 is manifestly broad enough to cover apparatus in which the abutment is moved into proper position by the hand of some one who will remember what day it is, and will place it at the height appropriate for that particular day. In other words, it will cover a nonautomatic abutment-moving mechanism. The judge who heard the cause at circuit thought that he was "compelled by the decision of the Circuit Court of Appeals to hold this claim valid." He reached this conclusion apparently because in discussing the construction of the claims the opinion of this court contained the statement "Claim No. 4 is the same as No. 3, except that by the omission of the word 'time' before the word 'mechanism' any intermittingly operating mechanism is within its terms," and held claim 4 valid and infringed. Commenting on this, Judge Ray remarks:

"But the Circuit Court of Appeals did not say that the movement or actuation of the abutment in claim 4 must be by intermittingly operated mechanism moving or acting automatically. I can discover no difference, except in the mere wording between claims 3 and 4 aside from the fact that in claim 3 the abutment is actuated, that is, moved by a 'time mechanism,' while in claim 4 it is actuated or moved by a mechanism other than a time mechanism. A mechanism operated by the hand of the operator and at his will is not a time mechanism."

It may fairly be said that under these specifications "intermittingly operated mechanism for actuating the abutment, substantially as described," means mechanism intermittingly operated by the clock movement described in the specifications; but Judge Ray's criticism,

that if so construed claim 4 is merely a duplication of claim 3, is sound; and claim 4 should not have been sustained in our former opinion. The error occurred because the distinction between automatic and nonautomatic devices cut no figure on the infringement side of the Dey Case, for the Dey machine was concededly automatic. Therefore, when construing the claims for the purpose of finding infringement, attention was concentrated on the Dey machine, which would infringe claim 4, whichever way it might be construed. When, however, our former opinion is considered as a whole, it is quite apparent that patentable novelty was found in Cooper because he showed an abutment whose movement was automatically controlled by a time mechanism. Thus in discussing the prior patent to Martin, No. 485,639, we differentiated his device, because "the gauge or abutment was movable by hand, and was in no way moved or controlled by the clock mechanism." Again, in summarizing the prior art we said:

"A fair deduction to be drawn from the prior art is that if a mechanic were requested to construct a card machine on the card of which the workman's time is accurately printed, and if he were given the patents above named, plus the card receiver with the movable abutment automatically controlled, he might be able to produce the Cooper device."

And again referring to the infringing machine we said:

"It has the card receiver * * * with the movable abutment limiting the movement of the card, and it has the connection with the clock motor, by means of a power shaft and beveled driving gear, which operates a cam giving the necessary intermittent motion to the movable abutment."

A motion for rehearing was made in the Dey Case supported by a 30-page brief. Counsel for defendant in that case evidently understood that the Cooper patent had been sustained by reason of its automatic features, as the following excerpt from his brief will show:

"If the complainant is entitled under its patent to monopolize any and all means for automatically controlling the position of the record," etc.

The Cooper patent covers only a time recorder, in which both the position of the faces of the printing wheels and the position of the abutment on which the card rests are regulated by the clock movements (time or striking) through appropriate mechanical connections. We so held on the first appeal; and found patentable novelty in such a device, holding that Cooper was the first to introduce into a time recorder means whereby the proper positioning of the card vertically is effected, not by the will of the operator, but by the mechanism of the clock. There is nothing in this record which induces any modification of the former ruling. Only two patents not in the former record are submitted. The first is Martin & McCoy British Patent No. 20,121 of 1892. It is not automatic as to shifting the position of the card for the different days of the week. The specifications state:

"In use the gauge will be set on Monday morning at the first position. * * * At noon the foreman will shift the gauge. * * * At the closing hour the gauge will be again shifted forward."

The other patent, Schulze, German patent No. 64,175 of 1892, contains no indication that the card is set for the different "work times" by any automatic mechanism. In view of this decision as to what Cooper's invention was, claim 1 is too broad, and cannot be sustained; and claim 4, being either too broad, or, if qualified by the words "substantially as described," a mere duplication of the earlier claim 3, cannot be sustained.

The question of infringement remains to be discussed. Three types of machine were complained of, but the first of these, defendant's Daily Time Recorder, apparently has no movable abutment and the charge against it was withdrawn. The second type is known as "Defendant's Exhibit, Defendant's Weekly Time Recorder No. 2." Complainant's brief states that this machine is alleged to infringe claim 1 only. Since claim 1 is not sustained, this type of machine need not be discussed. In it the abutment is raised to its proper place by a foreman who carries the key to a square-headed arbor on which the cam is located, an indicator enables him to see when he has turned the arbor far enough to bring the abutment to its position for Tuesday, Friday, or whatever day it may be. The third machine is known as "Complainant's Exhibit No. 2, Defendant's Weekly Time Recorder." Upon the question of infringement various points of difference have been pressed in argument. The abutment in defendant's machine is moved every day instead of every half day. Defendant's machine has a cover which closes the mouth of the card receiver, excluding dust, and which must be moved out of the way before a card can be inserted. After being moved out of the way the cover is replaced by the machine automatically when the close of the day is reached. Cooper's machine has no cover. Defendant's machine has a latch carried on the abutment which will be depressed by putting the card squarely on the abutment, thus releasing a detent and allowing the handle which operates the printing devices to be depressed. It also has an offset on the abutment and a cut-corner on the card which secures the card's always being placed in the holder with its proper face towards the printing wheels. Both these details are lacking in the Cooper machine. Defendant has three printing wheels instead of two. All these modifications and additions may be improvements, meritorious enough to secure a patent for them, but they will not negative infringement if a defendant uses the broad invention which a prior patentee has described and covered by his claims. Electric Smelting Co. v. Pittsburgh Reduction Co., 124 Fed. 933, 60 C. C. A. 636. In the Cooper patent the card receiver is movable laterally relatively to the time stamp; whereas, in defendant's machine the card receiver is rigid and the printing wheels are movable laterally. Such a transposition of parts or of motion will not negative infringement when the same result is obtained in substantially the same way. Consolidated Fastener Co. v. Hays, 100 Fed. 984, 41 C. C. A. 142. Having thus disposed of these minor objections it will be necessary to consider defendant's type of machine, as to the movement of its abutment; both machines, complainant's and defendant's have the old time printing stamp, and that side of the machine need not be discussed.

In defendant's third type the abutment is affixed to a lever which rises as a cam moves under a pin projecting from said lever. This cam is mounted on an arbor which terminates at the side of the machine in a cogged wheel or pinion, 28. The cam is not mounted directly on the arbor but upon a sleeve, which is so arranged that when the arbor rotates in a direction opposite the hands of a clock (anti-clock-wise) the sleeve slips over the arbor and no movement is imparted to the cam. But when the arbor rotates in a clock-wise direction it carries the cam with it. If the cam moves a short distance it will, through the pin and lever, raise the abutment the space required to shift from one day to the next; if the cam moves a longer distance it will raise the abutment still higher. It is apparent that the cam will move only when the cogged wheel, 28, at the end of the arbor moves in a clock-wise direction. The power which moves that cogged wheel is applied through a perpendicular toothed rack which meshes with the cogs. In this rack there is a slot in which plays a stud that is attached through connections, to a swinging arm, which arm is rigidly attached to the shaft which carries the cover of the card-holder. As the cover is swung outward the arm and stud are swung upward; a slot and pin rigidly limit the movement of the arm, and when it reaches its highest point, the cover then being furthest from the machine, the parts are latched in position. At the close of the day on which they were thus latched, portions of the mechanism actuated by the clock movement disengage the latch, the cover flies back to its place above the holder, and the stud returns to its normal position in the lower part of the slot in the toothed rack. With regard to the stud, which moves upward under the pull given to the cover by the workman seeking to place his card in the holder, this is to be observed. If it is in the lowest part of the slot of the rack at the time the pull comes it will move through the open slot and not lift the rack at all. This is its position when the machine has been used for stamping a card on any particular day and it remains such during the remainder of that day. If, when the pull comes, the stud is not so near the bottom of the slot, by reason of the perpendicular rack being depressed, it will, before reaching the limit of its movement, contact with the top of the slot and raise the rack as much as the latter was depressed before contact was thus made. Inasmuch as this rack meshes with the cogged wheel, 28, which when moving in clock-wise direction moves the cam, it is manifest that the greater the movement of the rack the greater will be the movement of the cam. In the exhibit submitted an upward movement of the toothed rack by the space of two teeth will revolve the cam so far as to lift the abutment the space for a single day, while a like upward movement the space of six teeth will revolve the cam so as to lift the abutment the space for three days. Therefore while the power that lifts the rack and, through cogged wheel, cam, etc., lifts the abutment is the hand of the workman, the position to which that power lifts it is determined by the position in which the rack stands, relatively to the cogged wheel, when the power is applied. In other words, while the abutment is lifted by the power exerted in pulling off the cover, the movement of the cam which pushes it up is controlled by the rack and the mechanism which puts the rack in proper position. It will be understood that all

these time recorders to be commercially useful must be so arranged that they will present the card at the true position for printing whether the factory is open from day to day or whether it is shut down for one or more days from any cause. This is accomplished in defendant's machine: Monday's work being over, if the cover is pulled off on Tuesday the abutment will be found in its proper place. If on the contrary no work is done Tuesday, Wednesday, or Thursday, and the machine stands unused from Monday to Friday the abutment will be found in its proper place when the cover is pulled off on the latter day. This adjustment of parts for the control of the mechanism of movement is in no way accomplished by the workman's pull on the cover. The cover is pulled off solely to make clearance for the card; the workman has no concern as to what day of the week it is or whether the rack is in one place or another; if he had he could in no way control the distance which the rack and cam should move the abutment as the result of his pull. His pull is always exactly the same, whether one night or several days have elapsed; it is limited absolutely by the pin and slot in the swinging arm and must be brought to that limit so as to latch, otherwise the cover will fly back. So far as the movement of the abutment is concerned it is an unconscious, unthinking act, and at the time it is performed thought in that regard is unnecessary, the machine has already done the thinking and through its control of the moving rack has put the abutment-moving parts in such position that the workman's pull, without thought or care of his, will accomplish the desired result. Practically the pull of his muscles is the equivalent of the pull of a coiled spring, it raises the abutment, but to what level it is raised is determined for him by the machine itself. The perpendicular toothed rack is placed in its proper position by the operation of the clock movement. A shaft, which transmits power from the clock, terminates in a gear, which drives two trains, one of which serves to operate the printing wheels. The other train terminates in a gear which makes one revolution per day. The shaft of this gear ends in a cam which engages a pin on a vertical sliding bar. As said cam rotates it lifts the bar until the pin falls off the point of the cam and the bar falls partly by gravity and partly by spring tension to its lowest position, this operation occurring once in 24 hours. It is not necessary to trace the details of the mechanism connecting this falling bar with the toothed rack; suffice it to say that its fall effects a downward movement of the rack for a predetermined amount, so much every 24 hours.

It will be remembered that anti-clock-wise movement of the cogged wheel which meshes with the rack may take place because the arbor on which it is fixed slides inside the sleeve which carries the abutment cam. If the machine is operated the day after the rack bar has been lowered the space predetermined for 24 hours such operation raises it again to normal. If several days elapse without operation of the machine the rack is lowered through several such spaces and when it is operated the rack returns that greater distance. As the rack, through the cogged wheel, controls the movement of the abutment cam and the clock movement controls the position of the rack it may properly be said to control the mechanism actuating the abutment. So far as it secures a position for the abutment proper for the particular day when

it is to be used the machine is automatic, although it needs the power of a man's pull to move the parts to the position thus secured.

The machine thus described seems to be fairly within the terms of the three claims not already disposed of. It has "intermittingly operated mechanism * * * for actuating said abutment," "controlled by a time movement." Claim 5. It has "actuating mechanism for moving the abutment and controlled from the time movement of the stamp." Claim 7. It has "actuating devices for moving said abutment intermittingly toward the marking wheels," and "a time mechanism for controlling it." Claim 10.

The decree is reversed, without costs of this appeal, and cause remanded to the Circuit Court with instructions to enter the usual decree, also without costs for injunction and accounting under claims 5, 7, and 10, and dismissing the bill as to claims 1 and 4.