FRANK F. SMITH METAL WINDOW HARDWARE CO. v. YATES.

(Circuit Court of Appeals. Second Circuit. June 5, 1914.)

No. 276.

PATENTS (§ 328*) — VALIDITY AND INFRINGEMENT — TRANSOM ADJUSTING DE-
VICE.

The Smith patent, No. 970,656, for a transom adjusting device, which is an automatic stop for pivoted metal windows, construed, and while not to be broadly interpreted, *held* infringed by a device in which the parts on the sash and casing, respectively, were merely reversed.

Appeal from the District Court of the United States for the Southern District of New York.

Appeal from an interlocutory decree of the District Court, Southern District of New York (216 Fed. 361) which held valid and infringed claims 2, 3, and 4 of patent No. 970,656, granted to Frank F. Smith September 20, 1910, for a "transom adjusting device."

J. H. Griffin, of New York City, for appellant.

S. J. Cox, of New York City, for appellee.

Before COXE and ROGERS, Circuit Judges, and MAYER, District Judge.

MAYER, District Judge. The validity of the patent is conceded. The sole controversy now is as to infringement.

The invention of the patent is for an automatic stop for pivoted metal windows, such as have lately gone into very general use in office buildings and factories, which, instead of sliding up and down, are pivoted near the middle so as to swing around like an ordinary transom. The invention is applicable to transoms as well as pivoted windows. These windows may be reversed so that the outside may be cleaned from within the building and opened for ventilation to any desired extent.

It is now commonly required that these windows shall be provided with means to insure their closing in case of fire, and it is in connection with windows designed to comply with these requirements that the principal utility of the invention is found. It automatically checks the window in such a manner that it will automatically close when released, or if secured in an open position by a fusible chain, will automatically close the moment the chain is melted by the heat, and thus isolate the room or rooms from which it opens.

The claims said to be infringed are as follows:

"2. In combination with a window frame having a reversible sash pivoting about an intermediate transverse axis, a sash stop acting between said frame and sash consisting of a laterally projecting gravity member 16, on the one acting against a stop, 18, on the other, the gravity member being supported on the one by a pivot, 19, to gravitate at all times automatically into alignment with the stop and being independent of said stop for its working, said gravity member and stop coming into contact when the sash has been pivoted partly open, thereby preventing its further opening, and said gravity member being pivotable out of alignment with the stop to permit reversal of the sash.

"3. In combination with a window frame having a reversible sash pivoting about an intermediate transverse axis, a sash stop acting between said frame and sash, consisting of a gravity member on the one acting against a stop on the other, the gravity member being pivotally supported on the one to gravitate at all times automatically into alignment with the stop, and being independent of said stop for its working, said gravity member and stop coming into contact when the sash has been pivoted partly open, thereby preventing its further opening, and said gravity member being pivotable out of alignment with the stop to permit reversal of the sash.

"4. In combination with a window frame having a reversible sash pivoting about an intermediate transverse axis, a sash stop acting between said frame and sash, consisting of a gravity member on the one acting against a stop on the other, the gravity member being movably supported on the one to gravitate at all times automatically into alignment with the stop, and being independent of said stop for its working, said gravity member and stop coming into contact when the sash has been pivoted partly open, thereby preventing its further opening, and said gravity member being movable out of alignment with the stop to permit reversal of the sash."

The art is narrow and defendant insists that complainant is entitled only to the specific structure disclosed by the patent.

Defendant has placed the gravity latch on the window frame and the stop on the sash, so that the latch gravitates into the path of the stop, automatically and at all times accomplishing all the functions of the device of the patent in suit and in substantially the same manner. The defendant's weight to accelerate the gravity movement of the latch and the extension below the pivot of the latch to prevent it from falling

out beyond the path of the stop are additions which do not change the principle of construction or operation of the parts.

The identity of the two sash stops in principle of construction and method of operation and the obvious reversal of parts is well illustrated in the following cut:

The difference in operation, as defendant contends, is that his device does not have the two movements which he asserts are characteristic of the device of the patent, i. e., a bodily movement with the window sash and a swinging movement on its pivot, whereby the lower end of the latch gravitates into alignment with the stop on the window frame.

 

But the latch or gravity member of the patent does not move into the path of the stop, except when it has been moved therefrom by hand and, like defendant's latch or gravity member, it is in the path of the stop.

As the patent specification prophesied:

"The invention is not to be limited * * * to the sash stop with the pivoted member on the sash and the fixed stop on the frame because it is apparent that these conditions might be reversed."

While a broad interpretation should not be given to the claims, we are satisfied that the case is one of a clear reversal of parts, where the altered mechanical adjustment is not difficult, once the original idea has been conceived. Consolidated Co. v. Hays, 100 Fed. 984, 41 C. C. A. 142; International Time Recording Co. v. W. H. Bundy Recording Co., 159 Fed. 464, 86 C. C. A. 494.

The decree is affirmed with costs.