## UNITED STATES FASTENER CO. v. BRADLEY.

### (Circuit Court of Appeals, Second Circuit. November 7, 1906.)

### No. 214.

1. PATENTS—INFRINGEMENT—SEPARABLE BUTTON.

The Pringle patent, No. 580,000, claim 1, for a separable button catch, designed for use with a stud member, to form a separable button or fastener, was not anticipated, and discloses patentable invention. Also *held* infringed.

2. SAME—SUIT FOR INFRINGEMENT—EFFECT OF NONUSE OF PATENT.

Where a patented device is obviously operative and useful, the fact that it has never been manufactured by the owner of the patent does not affect his right to maintain a suit for infringement.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 34, 448.]

Appeal from the Circuit Court of the United States for the Southern District of New York.

On appeal from a decree of the Circuit Court for the Southern District of New York, holding valid and infringed claim 1 of letters patent, No. 580,000, granted April 6, 1897, to Eugene Pringle, for an improvement in separable buttons. The opinion of the Circuit Court is reported in 143 Fed. 523.

J. A. Carr, for appellant.

Donald Campbell and H. C. Messimer, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. The facts are fully set out and the issues clearly stated in the opinion of the court below. These need not be repeated.

We agree with the judge of the Circuit Court in his disposition of the defenses of noninfringement, double patenting, inoperative character of the device covered by the first claim, abandonment and res judicata. That the latter defense was correctly disposed of is now conclusively established by the production in court of the original decree showing affirmatively that the former suit was not decided on the merits but was dismissed solely for lack of prosecution. The only question requiring further consideration is the question of patentability.

The invention, so far as it is involved in the present controversy, relates to improvements in the socket member of snap fasteners for gloves and other articles which are to be detachably fastened together. Previous to the patent the art had developed largely, though not exclusively, in the direction of improvements in the stud member, which was made with a resilient globulous head, which was forced into a nonyielding socket contracting and expanding each time it was pressed in or pulled out. The present invention reverses these conditions, the stud being solid and unyielding and the socket member being elastic. The description and drawings illustrate a two piece studholder consisting of an elastic slitted stud-catching part and a holder therefor so attached that the central elastic stud-holding piece is held firmly in

position but with sufficient room in which to expand when the stud is forced against its inner surface.

The first claim was suggested by the examiners of the patent office after the subject-matter of the invention had been thoroughly discussed and carefully examined by them. The claim is as follows:

"(1) A separable button-catch comprising an apertured washer and an eyelet having a shank of less diameter than the aperture of the washer, and having two enlargements securing it in the aperture of the washer and slitted lengthwise through the shank and the enlargements as and for the purpose set forth."

The device of the claim when completed is so diminutive in size and simple in construction that, unless care be taken, the assertion that there is no room for invention in so small a structure may receive greater consideration than is warranted. This court has repeatedly upheld patents for similar improvements, the test being not the simplicity of the device, but the difficulties overcome and the result accomplished.

In Fastener Co. v. Littauer, 84 Fed. 164, 28 C. C. A. 133, a patent for similar improvements in the stud member of a snap fastener was, after full consideration, declared valid. See, also, Kent v. Simons (C. C.) 39 Fed. 606; Fastener Co. v. Hays, 100 Fed. 984, 41 C. C. A. 142; Consolidated Co. v. Fastener Co. (C. C.) 79 Fed. 795.

The improvement now under consideration, notwithstanding its simplicity, shows a marked improvement over the elastic sockets of the prior art. It is simple, inexpensive, strong and durable; it does not tear or injure the material to which it is attached or lose its elasticity by use. The washer not being slitted, but firm and rigid, prevents the undue expansion and consequent weakening of the elastic stud-catcher, which is at all times held in proper position for engaging with the stud. A device having these valuable characteristics is not found in the prior art.

The defendant's expert was asked on direct examination to name the patents which, prior to September 8, 1888, the date of Pringle's application, "showed a socket-member of a fastener comprising a slitted eyelet mounted in an apertured washer." In answer he named patent No. 181,979, granted to C. M. Platt in 1876, and patent No. 374,609, granted to C. W. Mandrill in 1887. He also mentioned two patents to W. S. Richardson, but these need not be discussed as they are apparently not relied upon in the defendant's brief and were hardly alluded to at the argument. Unquestionably the Platt and Mandrill patents are defendant's best references.

Platt shows an eyelet having a slot cut into it breaking its continuity and permitting expansion and contraction. The eyelet is secured to the shoe or glove by punching a hole in the fabric, passing the shank of the eyelet through and upsetting the end of the shank to form a flange. The eyelet does not form a complete annulus because of the slot which is cut into it. One of the figures shows the socket made in two parts, both in the form of split eyelets, one slightly larger than the other. The latter is first affixed to the fabric when the former is inserted and clinched thereto thus giving additional flange surface and keeping the socket more firmly in position. "In all cases, however, the

slot or opening 'g' must be made through both flanges and the shank of the eyelet." If this were otherwise the necessary resilience would be lacking. In operation the socket is pressed over the stud when the socket, or eyelet, by reason of the slot formed therein, will spring open, permit the enlarged head to pass and contract again below the head. The parts are disengaged by pulling the fabric to which the eyelet is attached upward, then the eyelet will again spread and permit the head to pass through. "An eyelet with a slot formed therein" is one of the elements of the claims.

We think it very plain that whether this member is constructed of one eyelet or two its continuity must be broken by the slot which is made through both flanges as well as the shank. If this were not so the device would be inoperative for want of elasticity. Certainly this is a very different device from the one in suit where the apertured washer prevents the resilient stud catch from being overstrained and unnecessarily expanded or distorted. Pringle presents the glovemaker with an accurate, symetrical, workable device, requiring no adjustment and needing only to be attached to the fabric without change or adaptation. Platt hands him a split eyelet, or two split eyelets, and tells him to clinch one or both to the fabric. Whether or not an operative fastener is produced depends largely upon the skill of the glovemaker.

The Mandrill patent is for an improved "glove fastener," in which the stud-holder consists of "a split expansible socket-ring or annulus, the interior periphery of which is made smooth for the ready and free passage of the head on the post." This socket-ring is provided with a tubular boss, which also has a longitudinal slot, which aligns with the slit in the ring, or annulus, thus imparting a yielding action to both the boss and socket-ring. The boss may be formed of a single piece of sheet metal with the socket-ring. When the stud is inserted and withdrawn the entire structure, ring, boss and fabric, must expand and contract, diminishing its resiliency, injuring the fabric and ultimately becoming detached therefrom. The Mandrill device is of the same type shown in the Platt patent, and has all the latter's defects, with some new ones added.

We are clearly of the opinion that neither patent anticipates the invention of the claim in controversy.

We are also of the opinion that it requires an exercise of the inventive faculty to produce the device of the claim. The record shows many attempts to construct a successful elastic socket member and it also shows as many failures. Pringle succeeded, by producing the exceedingly simple combination of the apertured washer and slitted eyelet as described and claimed. The invention, though one of minor importance, is entitled to protection.

It is asserted by the defendant that the complainant never made fasteners under the Pringle patent. If this be true it is wholly immaterial to the present controversy. Where it is asserted that a patented device is inoperative and lacks utility, evidence that it has never been put to use is persuasive, but in a case like the present, where the fact that the device is useful and operative can be seen at a glance, such evidence is negligible. The complainant had a right to use the patent in any way it saw fit.

The decree is affirmed.