UNITED STATES FASTENER CO. v. STAHEL et al.

(Circuit Court, S. D. New York. December 18, 1906.)

PATENTS—INVENTIONS—BUTTON.

The Kempshall patent, No. 565,276, for a button or snap fastener, claim 3, which covers a button-head or socket member, is void for lack of novelty or patentable invention in view of the prior art.

Suit in equity to restrain alleged infringement of United States letters patent No. 565,276, dated August 4, 1896, to Eleazer Kempshall, assignor, to Theopolus King, trustee, for "button," and for an accounting.

Donald Campbell (Hillary C. Messimer, of counsel), for complainant.

R. R. Rasquin (Wm. F. Hall and Wm. W. White, of counsel), for defendants.

RAY, District Judge. The patent in suit relates to that class of buttons known as "snap fasteners"; that is, you have a button or button-head with a socket into which you insert, and with which you connect, usually, an eyelet or some similar device, having a flange which connects the button or button-head to one flap or part of a garment or glove. Into this socket you push, usually, a resilient stud member attached to the other flap of the garment or glove, thus fastening the two flaps together. The eyelet in the socket of the button-head may be resilient, and the head of the stud member may be solid or non-resilient. In this patent the eyelet (tubular) is not resilient, but has fingers, which, pushed into the dish-shaped metal head or core (one of the elements of the claim in suit), come in contact with the under side of the bottom of the dish-shaped head, and are spread outwardly, and the two parts are thus held together, and the button-head is attached to one flap of the garment or glove. The recess or socket thus formed in the button-head is larger on its interior than at its opening, or at the point where it engages with the flap, and a resilient stud member attached to the other flap of the garment, when pushed into the recess, expands, and the two flaps are thus held together. The claim in suit (claim 3) reads as follows:

"(3) A button-head, comprising in its construction a dish-shaped head, whose edge is bent over upon itself, and extended to form a flange that extends rearwardly and inwardly, the sides of said dish-shaped head and said flange being arranged in planes that are at an angle to the axis of the head, and a covering of plastic material molded about the top and sides of said head, and anchored thereto by the flange, substantially as and for the purpose set forth."

Take an ordinary metal pan or basin, reduced in size, with its sides sloping from its bottom outwardly, and extended to the necessary height, and then turned or bent over and extended downwardly and inwardly—that is, towards the axis of the dish—to the required distance, thus forming thereby the flange, and we have the metal core described. This core can be made of any metal. Fill and cover it on its upper and outer sides with plastic material of any kind, so far

as the patent goes, and we have the button-head or member of the button described in claim 3 (the one in suit) of the patent. It is assumed that this dish-shaped core is cylindrical. The flange, we will assume, is at such an angle with the sides proper as to leave a space between it and the sides, and so form "a gripping member," and also form "an anchoring means" for the plastic covering. I fail to discover novelty amounting to invention when we consider the prior art in this combination of elements.

Complainant's expert, William Edson, says of the patent and claim in suit, as follows:

"Q. 4. Please explain the character of the button which is shown in the Kempshall patent in suit, and described in the third claim thereof. A. In the patent the thing which is claimed is called a button, but as described in the descriptive part it is in fact what is now known as a snap fastener. This consists properly of a button-head which is attached to the outer cloth or fold by means of an eyelet, and a second part, which consists of a bulbous portion indicated by r' in Fig. 4 of the drawings of the patent. This part is attached to the inner fold or part to which the outer fold is to be attached by the snap fastener as a whole. The parts referred to in the third claim consists of a button-head alone, and relates purely to the two parts that form the button-head. Of these two parts the essential one is of metal, and is referred to as a dish-shaped head, and shown by itself in Fig. 1. The essential operating features of this dish-shaped head consist of an inclined member a4 (see Fig. 1), which has integral·with itself a part spoken of in the second line of the claim as an 'edge.' This edge is bent over upon itself, so as to extend rearwardly and inwardly. Rearward, in this case, means from the outside or button-head proper towards the cloth to which the outer fold is to be attached by means of the fastener. In fact, the part a4, called the 'edge,' and the part a2, called the 'flange' constitute the whole of the operative part of what is called the 'dish-shaped head,' and in itself forms a metallic lining for the plastic material which constitutes the other part of the button-head; that is, the plastic material forms a convenient and ornamental part, while the other parts described—that is, the dish-shaped head— constitutes a part whose sole function is to properly hold the eyelet to the button-head. The 'dish-shaped head' is formed as described so that it may be firmly molded into and held in the plastic material which forms the ornamental part of the button-head, and in the claim it is said that the plastic material is anchored by this flange—that is, the flange marked in the drawing a2—which I understand means that the plastic material is held to the dish-shaped head by means of this flange that extends rearwardly and inwardly. The other function of this flange, as I understand it, is simply to form a fastening for the upper edge of the eyelet, which is used for fastening the button-head to the fabric. The button-head of the claim consists of two parts only, and is complete and entire in itself. The essential and operative part being made preferably of metal, and having an 'edge' and a flange which together form what may be called an anchor, which is securely held to the part which forms the second part of the button-head, namely the plastic material, which is molded onto and about the said edge of the flange, and serves as an ornamental finish for the said button-head. These two elements, namely the dish-shaped head and the plastic material, are the only elements referred to and described in the third claim, and they constitute the subject-matter of the said third claim."

And again:

"There are two distinct elements referred to in this claim: First a dish-shaped head. This dish-shaped head has a flat central portion, which is not referred to specifically in the claim. The part referred to in the claim is the 'edge,' which is bent over on itself. This edge must refer to the parts marked in Fig. 1, a4, a1, a2; that is, these three divisions of the edge constitute the sides, a4, the junction or edge proper, a, and the flange, a2. The edge

as used in the claim must refer to these three parts, since it says that it is bent over onto itself; and further on it says: 'And extended to form a flange that extends rearwardly and inwardly, the sides of the said dish-shaped head and said flange being arranged in planes that are at an angle to the axis of the head.' These planes are indicated by a4 and a2 in the drawing Fig. 1, and together constitute the first element of the claim, and form together all that is required for anchoring the plastic or second element of the claim to the first element. The second element of this third claim is a covering of plastic material molded about the top and sides of the said head, and anchored thereto by the flange. This claim makes no reference to any other parts except those mentioned, namely, the dish-shaped head and the plastic part; the dish-shaped head serving to make a firm and durable socket into which the upper edges of the eyelet may be forced and held, the other element being principally for ornamental purposes, and for preserving the metal from becoming unsightly. The plastic part also makes the button-head considerably larger, therefore better than it would be if the dish-shaped part alone were used."

And again:

"X-Q. 17. You do not contend there is anything novel in a button-head having a surface for deflecting the upper end of the tubular part of an eyelet and a surface for interlocking with such deflected portions, whereby the fabric is clamped between the eyelet and the head, and the 'head thus secured in place, and a part corresponding to the resilient stud of the patent in suit intended to engage with the eyelet,' do you? (Objected to as improper cross-examination, since no basis whatever has been made for going into the question of novelty.) A. I do not. X-Q. 18. So far as the structure called for by claim 3 of the patent in suit is concerned, it is immaterial what sort of an eyelet is used in connection with the button-head. This is correct, is it not? A. It is, except that the eyelet must be adapted to this button-head. X-Q. 19. You mean that it must have a tubular part intended to be outwardly deflected when pressed against a surface such as a4, so that it will interlock with a surface such as a2. Is my understanding correct? A. I think it is. X-Q. 20. In other words, so far as this claim is concerned, it is immaterial exactly what functions the part intended to interlock with the head performs, so long as said part has a tubular portion intended to be deflected when pressed into the head by one surface of the head, so that it will interlock with another surface of the head. Is not this correct? A. As the claim makes no mention or allusion to any eyelet whatever, it is difficult to define or limit in any manner whatever the shape of the eyelet or its construction. As I understand it, it is only essential that the part that serves the function of an eyelet shall interlock with this button-head when the two are put together. X-Q. 21. In other words, the construction or function of the part which interlocks with the head gives no vitality to this claim, the same covering solely the construction of the head itself; is this not correct? A. I think so."

In short the claim embraces a dish-shaped head of metal, which forms a socket for the button-head, and is the only operative part of the device; the covering of plastic material being ornamental mainly, but serving also to make the button-head larger and firmer. However, the idea of a plastic material, hard after being attached in place, for a button-head or button is old, or, if not old, would occur to any one skilled in the art. The mode and manner in which the plastic material is held to the dish-shaped head or metal socket is not new or novel. The edge of the dish-shaped head "bent over on itself," and "extended to form a flange that extends rearwardly and inwardly"—that is, inwardly towards the sides of the dish and rearwardly towards the garment—form a flaring or spreading socket, and when the eyelet of the patent, not mentioned in the claim in suit, or any similar eyelet, is pushed in, its ends are spread outwardly, and necessarily held against any ordinary force applied to separate the parts. This construction

is not new or novel. It would, in my judgment, occur to any mechanic or person skilled in the art. It is plainly suggested in prior inventions in this art. It is quite true, as said by Judge Coxe in U. S. Fastener Co. v. Bradley (decided November 7, 1906) 149 Fed. 222, speaking of a patent for improvements in a socket member of a button-head in this art granted April 6, 1897 (Pringle patent No. 580,000, granted April 6, 1897): "Previous to the patent, the art had developed largely, though not exclusively, in the direction of improvements in the stud member." But this condition of the art does not warrant the upholding, as disclosing patentable novelty and utility, every device, or every form of device, not before used in the art. When a device made the subject of a claim is so plainly indicated in the prior art that one possessing ordinary skill therein will naturally see it and its contruction and utility, we can hardly accredit him with inventive skill if he does see it, and puts it in form for use.

Entertaining these views, I need express no opinion as to the defense of anticipation or noninfringement, although I do think the defendants' button is more near the prior art than complainant's button-head. There will be a decree dismissing the bill of complaint, with costs.