BERYLE v. SAN FRANCISCO CORNICE CO.

(Circuit Court, N. D. California. July 22, 1910.)

No. 14,776.

1. PATENTS (§ 18*)—INVENTION.

A change produced in a process or combination is not to be rejected as obvious or wanting in inventive thought because it tends to simplicity of action, but the simplifying of a device or process may in itself amount to invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 18; Dec. Dig. § 18.*]

2. PATENTS (§ 230*) — INFRINGEMENT — IMPROVEMENT PATENTS — DOCTRINE OF EQUIVALENTS.

Secondary or improvement patents, equally with those of a primary character, are entitled to be protected against infringement from equivalents to the full extent that a fair and reasonable construction of their claims will warrant.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 367; Dec. Dig. § 230.*]

3. PATENTS (§ 26*)—INVENTION—NEW COMBINATION OF OLD ELEMENTS.

If a new combination and arrangement of known elements produces a new and beneficial result never attained before, it is evidence of invention, and such result need not be new and useful in a primary sense, but only approximately so.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. § 26.*

Patentability of combinations of old elements as dependent on results attained, see note to National Tube Co. v. Aiken, 91 C. C. A. 123.]

4. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PROCESS OF PUTTING METAL FACING ON WOOD.

The Beryle patent, No. 887,995, for a method of casing wooden mouldings, etc., while for an improvement on the prior art, was not anticipated, and discloses invention, and is of such merit as to entitle it to a construction sufficiently broad to give it protection against a method using palpable equivalents. Also, *held* infringed.

In Equity. Suit by Andrew Beryle against the San Francisco Cornice Company. On final hearing. Decree for complainant.

G. E. Harpham, for complainant.

F. J. Kierce and James P. Sweeney, for defendant.

VAN FLEET, District Judge. This is a bill to enjoin the infringement of letters patent issued to complainant for a device for covering wooden mouldings and others forms of wood with metal casing, and for damages ensuing to complainant from the infringing acts of the defendant.

The defenses interposed are want of invention and noninfringement. Complainant's device consists of a table, bench, or other convenient base on which is arranged a bed-plate with a die or series of dies and proper securing means to hold the material while in course of being acted upon; the process of putting on the casing being aptly and clearly described in the claims of the patent alleged to have been infringed, as follows:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"1. The herein described method of putting on a metal facing on wood consisting in first securing the front ends of the metal and wood so they will travel together, and then simultaneously pushing the wood and metal for the facing of the same through a die by pushing means applied to the rear end of the wood.

"2. The herein described method of putting on a metal facing on wood consisting in securing the front ends of the metal for the facing, and the wood to be faced so that they will travel together and then applying pushing means to the rear end of the wood and simultaneously pushing the wood and the metal for the casing through a succession of dies adapted to form the metal upon the wood and imbed the edge of the metal in the wood whereby it is locked thereon."

The alleged infringement is accomplished by means of two certain unpatented devices or machines admittedly used by defendant which are thus described in a stipulation in the record as to their construction and operation:

"In one machine the sheet metal with which the wood moulding is to be cased and the wood moulding were secured together at their front end, and were placed together on a table which contained a forming die or series of dies on the top thereof. The wood moulding and the metal to case the same were then forced or pulled through the die or series of dies by means of a piece of iron which was hooked on to the rear end of the wood. This piece of iron which was hooked on to the rear end of the wood was attached to an iron rod which extended beneath the table to the forward part of the same and was connected up to mechanism which drew the rod forward, thereby causing the wood and metal to be forced or pulled through the forming dies."

In the second:

"The wood and the metal for casing the same were secured together at their front end and were placed on a table which had situate thereon a forming die or series of dies. A push-bar in the form of a wooden scantling about 3 inches square and of the necessary length was brought into contact with the rear end of the wood. This push-bar was operated by mechanism beneath the table which moved the push-bar forward, and caused it to push the wood and metal through the forming die or dies."

1. As to the defense of want of invention, which is based on the theory of anticipation, the evidence shows that there existed at the time of complainant's application for patent a process for incasing wood with metal commonly called the "pulling process," evidenced by certain existing patents. This process consisted substantially of a device whereby it was necessary in preparing the material to be processed that the moulding or other wood be first cut down or reduced in size at the introductory end, and the casing metal so cut at that end as to permit of the insertion of the wood and metal into the die for such distance as to enable the reduced end to pass through and project beyond the die so as to be seized and held by a pair of tongues or clamps attached to a chain extending in front, whereupon, power being applied, the material would be forcibly pulled through the die by the chain and the forming process of compressing the metal around the wood thus accomplished. By this process, as the evidence establishes, much time was consumed in first preparing the material for insertion into the die, and, after it had been processed, more time was consumed in cutting off by hand the reduced end of the wood and metal which was of no value in the finished product; while the material thus cut off and

thrown away entailed, with the time consumed, a very material percentage of loss to the manufacturer.

The evidence shows that the complainant's process eliminates this consumption of time and waste of material. No preparatory forming up of the material for processing is required. The wood and metal are cut in lengths suitable for the use to which the finished product is to be put. They are then secured or fastened so as to "travel together," are simultaneously forced through the dies and emerge in a completed state ready for use in the structure for which they are designed. The evidence also shows that by this process, if the work requires the ends of the moulding to be cased, it is accomplished while passing through the dies by the simple means of leaving the metal long enough to turn up over the ends, and, by the use of spacing blocks, the ends are incased as perfectly as the body, thus avoiding the necessity of doing it by hand. The evidence further tends to show that, by this process, the casing material is more closely compressed and fitted upon the wood than by the former, and gives a better result in the finished work. As a result of these differences in the two processes, it very clearly appears, notwithstanding some conflict in the evidence, that there is a considerable percentage of value to the manufacturer in the work done by that of the complainant over the one previously existing. Defendant's contention is in substance that these differences in the working of complainant's process, if of any considerable merit at all, constitute a mere improvement in degree resulting from mechanical differences in method of treatment, and grow out of simple and obvious changes which in the light of the existing art, were all anticipated and in common knowledge before the date of his patent; that they are therefore entirely wanting in novelty, and involve no inventive thought which will sustain his patent.

As to the prior art, all of the anticipating references put in evidence are based more or less closely upon the idea embraced in the so-called pulling process as above described. One of them, the Appleyard device, had a feature not common to the others, whereby through the instrumentality of a toothed roller upon which the material traveled its course through the dies was facilitated; but in other respects the device worked on substantially the same plan as the others and avoided none of their defects. Moreover, the evidence tends to show that this device could not be successfully used where all four sides of the wood were to be incased, owing to the fact that one face of the material would be injured by the teeth of the roller in passing over it. I am satisfied that there is nothing so distinctive in the working of this device as to effect an anticipation of complainant's patent if the other references do not.

If complainant were making the broad claim of novelty in the mere function of forcing the material to be processed through a die or dies, these references would undoubtedly constitute an anticipation. But he makes no such claim. What he is claiming as new in the process is, first, the feature of so securing the initial ends of the wood and metal together that the moulding and casing metal will travel together; and, secondly, forcing the material thus combined through the dies by pushing means through power applied to the rear end. These are the dis-

tinctive claims of his patent. As mere structural differences in the device from those previously existing, it may be conceded that they are simple; but whether they are obvious changes, suggested by the prior art, must depend upon considerations other than their mere simplicity. Simplicity in mechanics is not a vice, but rather a virtue—a strength, not a weakness; and this is especially true in the field of invention. A change produced in a process or combination is not to be rejected as obvious or wanting in inventive thought because it tends to simplicity of action. In Dececo Co. v. Gilchrist Co., 125 Fed. 293, 298, 60 C. C. A. 207, it is held that simplification of a mechanical device, when of a substantial character, by the elimination of features which are expensive and burdensome, may amount to invention; and it is aptly said that "to obtain absolute simplicity is the highest trait of genius." And whether the change is of a substantial character is to be determined·not so much from its apparent simplicity in a mechanical sense as from the results produced. As stated in United Fastener Company v. Bradley, 149 Fed. 222, 79 C. C. A. 180, the test of patentability in an improvement of an existing art is "not the simplicity of the device, but the difficulties overcome and the result accomplished."

The same test is to be applied in determining whether the changes effected are so obvious as to evidence the use of mere mechanical skill rather than invention. It is a very common and usual thing in cases involving the validity of patents for improvements in a prior art, where all the elements are old, to interpose the defense of want of invention based upon the claim that the improvements wrought are merely obvious mechanical changes suggested to the mind of the skilled artisan from existing devices or processes. As stated by Judge Wallace in International Tooth Crown Co. v. Richmond (C. C.) 30 Fed. 775, in answering a like claim:

"It is not difficult, after the fact, to show by argument how simple the achievement was, and, by aggregating all the failures of others, to point out the plain and easy road to success. This is the wisdom after the event that often confutes invention, and levels it to the plane of mere mechanical skill."

But, as there indicated, the court should be chary in giving ear to this siren song that seeks to deprive the worthy of well-earned effort. Mr. Justice Bradley in Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177, has this to say upon the same subject:

"At this point we are constrained to say that we cannot yield our assent to the argument that the combination of the different parts or elements for attaining the object in view was so obvious as to merit no title to invention. Now, that it has succeeded, it may seem very plain to any one that he could have done as well. This is often the case with inventions of the greatest merit. It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produces a new and beneficial result, never attained before, it is evidence of invention."

And such result need not be new and useful in a primary sense, but only approximately so. In St. Louis St. F. Co. v. Am. St. F. Mac. Co., 156 Fed. 574–576, 84 C. C. A. 340, in sustaining a patent introducing an improvement in the old method of flushing or cleaning

streets, the Circuit Court of Appeals of the Eighth Circuit, in answer to the same defense under consideration here, say:

"The new and useful result claimed is the effective loosening up of dirt and material on the street and washing them off into the gutter by one action without injury to the street. To accomplish a new and useful result within the meaning of the patent law (section 4886, Rev. St. [U. S. Comp. St. 1901, p. 3382]), it is not necessary that a result before unknown should be brought about, but it is sufficient if an old result is accomplished in a new and more effective way. If the value and effectiveness of a machine are substantially increased, the new combination of old elements, which does it, is patentable. Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177; Cantrell v. Wallick, 117 U. S. 689–694, 6 Sup. Ct. 970, 29 L. Ed. 1017; Anderson v. Collins, 58 C. C. A. 669, 122 Fed. 451, and cases cited."

Tested by these principles, it cannot be said that the changes in the process disclosed in the patent are so obvious as to have been anticipated by the prior art. It is true that, regarded purely from a mechanical point of view, it appears at first glance a simple thing in the one instance to merely change the method of securing the ends of the material for process, and in the other to change the point of contact in the application of the propelling power; but, when we regard the material difference in result, the fact that the old process had been in practice for a number of years without the elimination of the cumbersome methods characterizing all previous efforts in the art, it furnishes very persuasive, and we have seen competent, proof of the presence of the inventive faculty. It must be borne in mind that the line which divides invention from mere mechanical improvement is indefinite and sometimes shadowy, and the result produced by the change is frequently the one potent factor in determining on which side of the line a particular claim falls. Here we have something in the way of substantial results which makes just the difference between success in the art and comparative failure; a process which brings forth a finished product as against one which leaves it incomplete; and this difference is sufficient evidence of invention.

2. With reference to the defense of noninfringement not much need be said. It was conceded at the argument by counsel for defendant, as is apparent, that, if complainant's patent is valid to the extent claimed, the devices practiced by defendant embody the equivalent of those claims and are an infringement. But defendant's contention is that the patent not being a primary one, but for a mere improvement, and that not a broad one, is so limited by the prior art as to narrow its construction to the precise form of device claimed by the inventor, and is not entitled to invoke the doctrine of equivalents; that, as defendant's devices are structurally different, they cannot be held to infringe. This contention is in line with what was supposed at one time to be the doctrine of the Supreme Court; that none but pioneer inventions were entitled to the protection of the so-called doctrine of equivalents. But the idea that any such doctrine ever in fact existed under the decisions of that court, when properly construed, has been exploded; and it is now settled that secondary or improvement patents equally with those of a primary character are entitled to be protected against infringement from equivalents to the full extent that a fair and reason-

able construction of their claims will warrant. Paper Bag Patent Case, 210 U. S. 405, 28 Sup. Ct. 748, 52 L. Ed. 1122.

It is held in that case, after an exhaustive review of all the previous rulings of the court, that those cases "are not to be construed as holding that only pioneer patents are entitled to invoke the doctrine of equivalents, but that the range of equivalents depends upon the degree of invention, and infringement of a patent not primary is therefore not averted merely because defendant's machine may be differentiated;" that "the claims measure the invention; and that, while the inventor must describe the best mode of applying the principle of his invention, the description does not necessarily measure the invention." (Quotations from syllabus.) Within these rules I think the patent in question, as indicated by the discussion of its character and the results produced, is clearly entitled to a construction sufficiently broad to give it protection against devices so palpably violating its claims as do those of the defendant.

As suggested in Albright v. Langfeld (C. C.) 131 Fed. 473:

"When the Patent Office has granted a patent to an inventor, the court should not be ready to adopt a narrow or astute construction fatal to the grant, and, in cases where there is any doubt, the test of practical success is always persuasive evidence of novelty, and has great weight in solving the question favorable to the invention."

3. There is but one objection to evidence noted in the defendant's brief—that to the introduction of complainant's Exhibits B to G, on the ground that no sufficient foundation had been laid. But the specification is not in accordance with our rule in that the place where the objection is to be found in the testimony is not referred to. Rule 53 governing final hearings in equity provides:

"Each brief shall contain a distinct specification of any objection relied on to the admission of evidence offered by an adverse party, which specification shall distinctly refer to the particular questions or evidence objected to, and the places where such objections are to be found in the testimony. Any objection not so noted in the brief shall be deemed to be withdrawn."

The specification, not being in form to require notice from opposite counsel, must be ignored by the court.

As a result of these considerations, a decree may be entered in favor of complainant as prayed, and providing for a reference to the master to ascertain the damages.