**SNELLING v. DERNELL POTATO PRODUCTS CO.**

District Court, W. D. New York.   July 2, 1929.

John S. Powers, of Buffalo, N. Y., for plaintiff.

Brayton G. Richards, of Chicago, Ill. (Henry B. Staples, of Buffalo, N. Y., of counsel), for defendant.

HAZEL, District Judge. The patent in suit, No. 1,199,124, issued on September 26, 1916, to Walter O. Snelling, relates to a process for preparing a food product and to the article. In the instant case we are concerned with potato chips, the main purpose of the patent being to remove or lessen rancidity or a disagreeable aftertaste from consumption. This he accomplished, following experimentation, by using an amount of desired fat or oil in frying the potato chips and then degreasing or removing the fat or grease necessarily used in producing the article. In its production the inventor first sliced the potatoes and then cooked them in suitable hot fat or oil vapors to put them in dry condition, following this step by drawing off the oil or grease. By this process, the specification declares, wholly new properties were imparted to the potato chips. The preferred method was to use a volatile solvent, such as ether and alcohol, and he suggested that a better result would be obtained by using butane, pentane, or petroleum ether (which would not impart a taste to the food) to extract the absorbed grease from the fried potato slices. He preferred to treat the cooked and drained potato slices with a hot, volatile solvent "until they are substantially degreased," and finally remove the solvent by warming the slices under subatmospheric pressure. It is also stated in the description that the process consists essentially in subjecting a cooked, dry food to the treatment, leaving it "entirely free from fat." The last quoted language is not to be considered, in my opinion, as a limitation to a process for removing all the absorbed grease until the potato chips are entirely free from fat, since I think the claims in issue, read in the light of the description, may fairly be construed in this particular as describing the maximum capacity of the patentee's process to which draining the fat may be carried. The paragraph using the word "essentially," and leaving the product free from fat, upon reading it with the more specific paragraph beginning at line 42 of the description, indicates that the inventor gave separate illustrations, one treating of a method for extraction of all excess fat, and the other for substantially degreasing it, followed by warming the slices under subatmospheric pressure. It seems to me quite natural to assume that the patentee conveyed the thought to the skilled in the art that, if the fat is entirely removed, a more stable or superior article will result, but the article would still have desired palatability upon extracting the excess grease in part, that is, in such quantity as would attain a favorable result. Indeed, the specification states that, owing to the wide range of modification of which his invention is capable,

the patentee does not wish to be understood as imposing limitations on his invention, unless indicated in the appended claims. It apparently became simply a matter of selection as to whether all the fat was to be drained, or drained in degree only, and as desired to achieve a satisfactory result.

There is evidence tending to show that the word "degreasing" or "degreased" used in the patent connotes, in the chemical art, both total extraction and a substantial degree of extraction. Such variations in terminology are generally accepted in construing a patent, in the absence of definite limitations appearing therein.

The main defenses are noninfringement and lack of utility. The patent has 14 claims, including process and article, but claims 2, 3, 10, and 13 only are in issue. It will suffice to reproduce the broad claim 2, claim 3, and article claim 10:

"2. The process of preparing food products that comprises subjecting a starchy food material to the action of a hot oleaginous fluid and subsequently degreasing the said material."

"3. The process of preparing food products that comprises subjecting potato to the action of a hot oleaginous fluid and subsequently degreasing the said potato."

"10. As a new article of manufacture, a starchy food product cooked with oleaginous material but substantially free therefrom."

To fry potato chips, of course, is not claimed to have been a new and novel thing to do, for cook book recipes in evidence disclose taking the fat from fried, sliced potatoes; and it is even stated in one of the old publications that all the fat is drawn from the cut pieces. Such drawing off, however, I find, was superficial, and consisted in the removal of the surface fat without extracting the fat from the tissues of the slices in the cooking operation. The prior publications are neither anticipatory nor of limiting significance. It was shown that the amount of fat extracted from the fried potato flakes, in practicing the process in suit, is about 40 per cent., while by the old housewife method of frying sliced potato pieces generally a percentage of about 39.4 was retained. Concededly no one, prior to the patentee, had conceived extracting from food material, or the product in controversy, all the absorbed fatty substance, or extracting it in a substantial amount to enable preservation without rancidity for a lengthy period.

The mere fact that the patentee has not marketed the described product, or has not actually used the process, does not deprive him of protection for its discovery, since its operative usefulness is apparent upon inspection of the patent and claims; and the skilled workman would have no difficulty in producing the article on examining the specification. U. S. Fastener Co. v. Bradley (C. C. A.) 149 F. 224. Moreover, as stated presently, a defendant's substantial use of a patented process for making its product is, as Judge Augustus Hand said in Smokador, etc., v. Tubular Products Co. (C. C. A.) 31 F.(2d) 256, a tribute to the value of the invention. This is especially true in the instant case where the defendant is shown to have paid one Moore, its secretary, who had procured from plaintiff a license (Exhibit 15), which was abandoned, a substantial sum of money on assignment to it of the Moore invention under which it is asserted that defendant makes its article. It appears that Moore has severed his connection with defendant since obtaining the license on November 7, 1918, and his present residence is unknown; and that plaintiff was unaware until 1923 that defendant manufactured its potato chips under the Moore improvement patent. Although there is no direct evidence that the licensee, Moore, was the same person who, from June, 1917, to October, 1918, was defendant's secretary, still, since his application for patent was pending during this period, his identity will be assumed. The utility of the patent is fully substantiated by the proofs.

As to infringement. Defendant contends that its product, the infringing product "Golden Crisp" is made in the manner described in Moore's patent, No. 1,265,236, namely, cooking the slices in grease and then subjecting the receptacle in which they are contained to treatment in a centrifugal machine of rotary motion for removing the major portion of the grease from the product. It is argued that infringement is avoided in that the surface fat only is drained, leaving the absorbed fat in the chips; and that rancidity is prevented, not by the rotary action of its machine, but by the character of the grease used. But of this I am unconvinced. Plaintiff has clearly shown that by the use of the centrifugal machine, surface and excess grease is removed, including a percentage of grease lodged or absorbed in the tissue of the potato flakes. I do not doubt but that the term "excess grease," as used in the Moore patent, refers to an amount beyond the normal amount that such a potato product is expected to contain or retain after the frying operation. The scope of the claims, construed in the light of the fact that Snelling

was the first to improve potato chips, making them more easily preserved and more palatable by extracting either all the absorbed grease or a proper degree of the whole to achieve the result of the invention, is such that reasonable application of equivalency should not be denied. The invention was new and novel and is entitled to protection. Defendant's president admitted that by his treatment with the rotary machine and heated air, he is able to extract more or less of the fat; that the amount taken from the product is simply a matter of degree; while defendant's expert Fowler also testified that the solvent extraction method of plaintiff, within a certain range, regulates the quantity of grease removed. Dr. Snelling's evidence also shows that experimentation with the rotary machine on potato chips bought in the open market (not defendant's chips) discloses a wide variation in the amount of fat extracted. (See Exhibits 17 and 18, and Exhibits 16 and 17, similar experiments under the Moore patent showing maximum extraction of fat range, from a minimum percentage to approximately 50 per cent. Experiment in court, using a laboratory machine, showed extraction of 18 per cent. on potato chips by use of defendant's treatment). Numerous other tests were given, but no useful purpose will be served in setting out the comparative results.

There is, in my opinion, no limitation contained in the patent in suit as to the kind of volatile substance usable for extracting the grease, and I find that plaintiff's product is edible without objectionable taste; and, moreover, that the centrifugal method of extracting the fat used by defendant is equivalent to the process described in the patent in suit; and defendant's use of an oil to insure keeping the product for a long time without its becoming rancid is immaterial. To thus impair, alter, or modify the function of plaintiff's process, even though it were to be considered as more advantageous, does not avoid infringement, since the principle of plaintiff's mode of treatment producing the result is substantially the same. General Electric Co. v. Alexander (C. C. A.) 280 F. 855; Tilghman v. Proctor, 102 U. S. 707, 26 L. Ed. 279. It makes no difference that defendant's use of the rotary machine was under a patent duly granted. Its function achieved the same result as was obtained by the Snelling patent, which, in view of the fact that extracting the absorbed fat was a new departure, could not be used without a license from him. In this connection it is also to be noted that, even though the patentee was unaware of all the advantages of his discovery, he is not to be deprived thereof by infringing modifications retaining substantially the same method and accomplishing the same result.

My conclusion is that plaintiff's patent is valid and infringed by defendant's method of producing the food product in question. Plaintiff may have a decree with costs.